# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LISA FRAZIER,

   Plaintiff,

v.

HENRY LEGAL GROUP, LLP d/b/a
HEARTLAND LEGAL GROUP, LLC,

   Defendant.

CIVIL COMPLAINT

CASE NO. 5:24-cv-10635

DEMAND FOR JURY TRIAL

## **COMPLAINT**

NOW comes LISA FRAZIER ("Plaintiff"), by and through the undersigned, complaining as to the conduct of HENRY LEGAL GROUP, LLP d/b/a HEARTLAND LEGAL GROUP, LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.*, violations of N.Y. Gen. Bus. Law § 349 *et seq.,* violations of the New York Credit Services Business Statutes pursuant to N.Y. Gen. Bus. Law § 458-a *et seq.*, as well as Breach of Fiduciary Duty, stemming from Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2.  This action arises under and is brought pursuant to the CROA.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant resides within the Eastern District of Michigan and a substantial portion of the events or omissions giving rise to the instant claims occurred within the Eastern District of Michigan.

## PARTIES

4.  Plaintiff is a consumer over 18 years of age residing in New York, New York.

5.  Defendant is a purported law firm, credit repair organization, and debt settlement provider that offers its clients both legal and non-legal services designed to resolve their debt issues and improve their credit history through the resolution of debts, amongst other services. Defendant is a limited liability partnership organized under the laws of the state of Michigan with its principal place of business located at 41000 Woodward Avenue, Suite 350, Bloomfield Hills, Michigan 48304.

6.  Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

2

## FACTS SUPPORTING CAUSES OF ACTION

7.   In approximately October of 2020, Plaintiff had accrued a number of past due obligations and debts which were negatively impacting her credit.

8.   Around this time, Plaintiff received an email solicitation from Defendant, wherein Defendant represented that its services would help Plaintiff become debt free and enjoy improved credit.

9.   Plaintiff spoke with Defendant and agreed to a face to face meeting with one of Defendant's representatives.

10.  Defendant explained the nature of its services and how Plaintiff would enroll a number of debts in Defendant's program, make monthly payments to Defendant, at which point Defendant would begin working on resolving Plaintiff's debts with the creditors or those seeking collection of the enrolled debts, and would similarly defend Plaintiff in the event of any sort of lawsuit against Plaintiff in connection with the enrolled debts.

11. Defendant further affirmatively represented that, if Plaintiff maintained certain monthly payments over a period of time, that all of her enrolled debt would be resolved and that Defendant would make payments to her creditors with the monthly payments she made to Defendant.

12. At all relevant times, Defendant represented that its services were for the explicit and implicit purpose of improving Plaintiff's credit, as its services would

reduce the debt load impacting Plaintiff's credit history and score, and that through this reduction her credit score would improve significantly.

13. Defendant further represented that Plaintiff would have attorneys and paralegals working on her account who would be available to answer Plaintiff's questions throughout the process.

14. Additionally, Defendant represented that its services would result in settlements being reached for approximately half of the balance at the time of enrollment.

15. After discussing the obligations she would enroll, it was represented to Plaintiff that, after four years of making the agreed upon payments, Plaintiff would be debt free and enjoy improved credit.

16. Finding Defendant's representations regarding the nature of its services desirable, Plaintiff entered into a contract with Defendant for the provision of services.

17. Upon information and belief, Plaintiff made certain upfront "retainer" payments to Defendant, or otherwise had her payments diverted to Defendant prior to Defendant performing the services that would have justified the retention of such fees.

18. Plaintiff then began making monthly payments to Defendant which totaled several hundred dollars per month.

19. Almost the entirety of Plaintiff's first two months of payments went towards Defendant's "retainer" fees amongst other miscellaneous fees, despite Defendant not having performed any of the work that would have justified the retention of such fees.

20. Although Plaintiff was current on her enrolled obligations, Defendant instructed Plaintiff that, rather than paying her creditors, she needed to let her obligations go into default and divert payments that were otherwise going towards such debts to Defendant for its services.

21. Plaintiff persisted in making her payments to Defendant well into the end of 2023.

22. Despite Plaintiff making payments for years, Defendant only resolved a small fraction of the 17 obligations Plaintiff enrolled in Defendant's program.

23. Upon information and belief, Defendant only resolved two of Plaintiff's enrolled obligations despite Plaintiff's maintenance of payments.

24. Plaintiff's program was supposed to end in October of 2024, yet it became apparent, based on the lack of progress Defendant made over the years, that Plaintiff would not complete Defendant's program within the timeframe initially represented.

25. Upon information and belief, Defendant's inability to resolve the obligations within the timeframe represented is indicative of the overarching deceptive and

misleading manner in which Defendant estimates the cost of its services and length of time consumers will need to make payments to become debt free.

26. Upon information and belief, Defendant intentionally underinflates the true cost of its services and ability to resolve obligations for substantial savings when inducing consumers to sign up, knowing that consumers who have already made years of payments totaling thousands of dollars would be more susceptible to increasing the length of payments and amount of money diverted to Defendant so as to not lose the significant investment they had made over the previous years.

27. Defendant's deceptive conduct was exacerbated but its additionally deceptive conduct in improperly depleting the funds from Plaintiff's settlement account for unperformed services that should have otherwise gone towards resolving Plaintiff's debts, as rather than pay the debts in the manner represented, Defendant persisted in enriching itself to Plaintiff's detriment.

28. Frustrated by the lack of progress and extent to which Defendant's services had been blatantly misrepresented, Plaintiff cancelled her agreement with Defendant.

29. Despite her cancellation of the agreement with Defendant, Defendant failed to refund Plaintiff for payments made in connection with services Defendant ultimately failed to completely perform for Plaintiff.

30. Frustrated and distressed over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

31. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary harm, denial of the benefit of her bargain, out of pocket costs in connection with Defendant's deficient provision of services, worsened financial position as a result of Defendant's failures, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

32. Plaintiff repeats and realleges paragraphs 1 through 31 as though fully set forth herein.

33. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

34. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit. Regardless of the services Defendant ultimately performed, it

holds it business out to consumers, as well as Plaintiff, as providing the ability to assist such consumers with improving their credit history through the use of Defendant's debt relief and settlement services.

### a. Violations of CROA § 1679b(a)

35. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

36. Defendant violated the above provisions of the CROA through its fraudulent and deceptive representations regarding the cost of its services and amount of payments would need to make in order to become debt free. When Plaintiff signed up for Defendant's services in October of 2020, she was told that payments over the course of four years would result in her being debt free. Despite making payments for three years, Defendant only managed to resolve two of Plaintiff's seventeen enrolled obligations. Upon information and belief, Defendant deceptively and misleadingly represented the timeframe over which Plaintiff would need to make payments to become debt free, and Defendant based its misleading representations

on additionally deceptive and misleading estimates as to the reduced balances Defendant could deliver on settled debts. Defendant engaged in these representations so as to make its services seem more appealing, and Plaintiff reasonably relied on these representations when deciding to sign up for Defendant's services. As a result of Defendant's representations, Plaintiff made payments for years under the false belief that unrealistic and misrepresented results were forthcoming.

37. Defendant further violated the above provisions of the CROA through its deceptive representations that Plaintiff should cease paying her creditors and instead divert those funds to Defendant. Defendant made these representations suggesting that following its advice would be in Plaintiff's best interests. However, Plaintiff's financial position was harmed as a result of Defendant's provision of advice.

38. Defendant further violated the above provisions of the CROA through its deceptive and fraudulent conduct in charging inappropriate fees not connected to any services that were actually being performed. Defendant's conduct in this regard depleted the pot from which settlement payments could and should have been made to Plaintiff's creditors. Defendant engages in this deceptive and misleading conduct in furtherance of its own bottom line and to the detriment of financially vulnerable consumers who have reached out to Defendant for assistance in addressing their credit issues.

**b. Violations of CROA § 1679b(b)**

39. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

40. Defendant violated § 1679b(b) through its receipt of payment for services not yet fully performed. Defendant charged Plaintiff on an upfront basis for services before performing any of the services that would justify the retention of such payments.

### c.  Violation of CROA § 1679c

41. The CROA provides that a credit repair organization must provide consumers with certain written disclosures prior to contracting with consumers.

42. Defendant violated 15 U.S.C. § 1679c through its failure to provide the written disclosures required under § 1679c.

### d.  Violation of CROA §§ 1679d & 1679e

43. The CROA, pursuant to  15 U.S.C. § 1679d(a), provides that no services may be provided until a contract meeting the requirements of the CROA is signed, or until 3 days following the date a contract is executed. Further, pursuant to § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as

follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" Under § 1679e, a CRO must provide a consumer a separate notice of a consumer's cancellation right.

44. Defendant violated 15 U.S.C. § 1679d(a) through its provision of services either without entering into a contract that complies with the CROA, and similarly by providing services within 3 days of a consumer signing up for Defendant's services. Defendant's contract does not comply with the CROA and the requirements regarding disclosure of consumers' right to cancel the contract.

### e.  Violation of CROA § 1679f(b)

45. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

46. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded her under the CROA. Defendant's contract attempts to justify its retention of payments prior to performing services, which is tantamount to Plaintiff waiving the protection afforded by § 1679b(b). Defendant's conduct further seeks to insulate itself from liability in connection with

the way its services are represented through the merger and integration clause it includes in its contract with consumers.

47. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, LISA FRAZIER, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF N.Y. GEN. BUS. LAW §§ 349 *ET SEQ.*

48. Plaintiff restates and realleges paragraphs 1 through 47 as though fully set forth herein.

49. N.Y. Gen. Bus. Law § 349(a) states that "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

50. Defendant violated § 349(a) in much the same way it violated the various provisions of the CROA outlined above. Defendant engaged in a series of deceptive acts and practices in connection with the manner in which it provided services to Plaintiff.

51. Defendant's conduct is further deceptive and inherently unfair given the extent to which it has engaged in numerous violations of the New York statutes applicable to its business. *See,* N.Y. Banking Law § 584-b (discussing prohibited activities for "budget planners."); *see also,* N.Y. Gen. Bus. Law § 456.

WHEREFORE, Plaintiff, LISA FRAZIER, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to N.Y. Gen. Bus. Law § 349(h);

c. Awarding Plaintiff statutory damages pursuant to N.Y. Gen. Bus. Law § 349(h);

d. Awarding Plaintiff treble damages pursuant to N.Y. Gen. Bus. Law § 349(h);

e. Enter an injunction restraining Defendant's further violations of law pursuant to N.Y. Gen. Bus. Law § 349(h);

f. Award Plaintiff punitive damages;

g. Award Plaintiff reasonable attorney's fees and costs pursuant to N.Y. Gen. Bus. Law § 349(h); and,

h.  Awarding any other relief as the Honorable Court deems just and appropriate

### COUNT III – VIOLATIONS OF N.Y. GEN. BUS. LAW § 458-A

52. Plaintiff restates and realleges paragraphs 1 through 51 as though fully set forth herein.

53. Plaintiff is a "consumer" as defined by N.Y. Gen. Bus. Law § 458-b.

54. Defendant is a "credit services business" as defined by N.Y. Gen. Bus. Law § 458-b.

55. The exemption for attorneys licensed in the state of New York does not apply to Defendant, as the services provided to Plaintiff were, upon information and belief, not provided by any attorney licensed in the state of New York, nor were any services in provided connection with any attorneys' practice of law but instead in connection with Defendant's non-legal debt resolution services. Upon further information and belief, Defendant outsourced the settlement services at issue to a third-party non-attorney, absent any meaningful oversight over or involvement in the services being provided to Plaintiff.

a.  **Violations of N.Y. Gen. Bus. Law § 458-c.**

56. N.Y. Gen. Bus. Law § 458-c outlines the information statement that must be provided by a CSO to a consumer.

57. Defendant violated § 458-c by failing to provide the requisite information in the manner required by the statute.

14

**b. Violations of N.Y. Gen. Bus. Law § 458-e.**

58. N.Y. Gen. Bus. Law § 458-e provides that "[i]t is hereby declared to be an unfair and deceptive trade practice and unlawful for a credit services business to receive or collect from a consumer any fee in advance of the performance of those services . . . ."

59. Defendant violated § 458-e through its charging of upfront fees before performing any services for Plaintiff.

**c. Violations of N.Y. Gen. Bus. Law § 458-f.**

60. N.Y. Gen. Bus. Law § 458-f outlines the requirements for contracts between consumers and CSOs.

61. Defendant violated § 458-f through its failure to provide the requisite contractual statements and disclosures in the manner required by New York law.

62. Defendant's non-compliant contract renders the entire contract void and unenforceable, as does it efforts to insulate itself from liability for its violations of law. *See* N.Y. Gen. Bus. Law § 458-g.

**d. Violations of N.Y. Gen. Bus. Law § 458-h.**

63. N.Y. Gen. Bus. Law § 458-h outlines a number of prohibits practices on the part of credit services businesses.

64. Defendant violated § 458-h in much the same way it violated § 1679b(a) of the CROA.

WHEREFORE, Plaintiff, LISA FRAZIER, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to N.Y Gen. Bus. Law § 458-i;

c. Awarding Plaintiff punitive damages pursuant to N.Y Gen. Bus. Law § 458-i;

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to N.Y Gen. Bus. Law § 458-i; and,

e. Awarding any other relief the Honorable Court deems just and appropriate.

## COUNT IV – BREACH OF FIDUCIARY DUTY

65. Plaintiff restates and realleges paragraphs 1 through 64 as though fully set forth herein.

66. Defendant owed Plaintiff a fiduciary duty arising out of the nature of their relationship. Defendant was purporting to provide legal and financial services to Plaintiff, inherently rendering it her fiduciary with regards to the financial services it was agreeing to perform.

67. Defendant breached its fiduciary duty owed Plaintiff given the nature of the "services" it provided. Despite purporting to have Plaintiff's best interest in mind, Defendant caused Plaintiff significant hardship through its provision of objectively and unreasonably misguided advice and services, including but not limited to the

indication that Plaintiff should cease paying her creditors and instead pay Defendant. Defendant further blatantly misrepresented its services and, rather than meaningfully perform the services it was hired to perform, instead collected its fees to Plaintiff's detriment and its own benefit. Defendant completely disregarded the fiduciary duties it owed Plaintiff, and Defendant's breach of such duties caused Plaintiff significant financial harm and emotional distress.

WHEREFORE, Plaintiff, LISA FRAZIER, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages;

c. Award Plaintiff punitive damages;

d. Award Plaintiff  reasonable attorney's fees and costs;

e. Enjoining Defendant from continuing its unlawful conduct; and,

f. Awarding any other relief as the Honorable Court deems just and appropriate

Dated: March 12, 2024                                    Respectfully submitted,

s/ Ahmad T. Sulaiman
Ahmad T. Sulaiman, Michigan Bar No. P82149
Counsel for Plaintiff
Admitted in the State Bar of Michigan
Admitted in the Eastern District of Michigan
Sulaiman Law Group, Ltd.

17

2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8181 x124 (phone)
(630) 575-8188 (fax)
ahmad.sulaiman@sulaimanlaw.com

s/ Nathan C. Volheim
Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the Eastern District of Michigan
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8181 x113 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com